UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| CAMILLE A. JOHNSTON ) | |
|     Plaintiff, ) | |
| ) | |
| V. ) | Case No: |
| ) | |
| JAMES E. MURRAY, ) | |
| ) | JURY TRIAL DEMANDED UNDER |
|     and ) | FRCP 38(B) |
| ) | |
| STAR INVESTIGATIONS, LLC., ) | |
|     Defendants. ) | |

For her Complaint, for which she demands trial by jury on all claims so triable, Plaintiff Camille A. Johnston ("Johnston") hereby states and alleges as follows:

## INTRODUCTION

The United States has long recognized privacy as a fundamental constitutional right entitled to protection from encroachment by the States under the Fourth and Fourteenth Amendments and other protections inherent in the Bill of Rights. To enforce those rights, the federal government has adopted a strict approach to protect privacy interests. In recognition that information retained by the State in connection with a driver's license is private, Congress passed legislation commonly known as the Driver's License Protection Act of 1994 ("DPPA") to safeguard this information. Missouri Courts recognizes the tort of intrusion upon seclusion. This case involves claims for violation of the DPPA, intrusions upon seclusion, and defamation by Defendants James E. Murray and Star Investigations LLC.

## FACTUAL ALLEGATIONS

1. This is an action for injunctive relief and money damages for injuries sustained when Murray illegally accessed and viewed Plaintiff Johnston's private, personal, and confidential driver's license information without a legitimate purpose. Murray then utilized this information to further intrude upon Plaintiff's seclusion by posting false and defamatory statements on social media posts alleging she committed the crime of abetting a fugitive.

2. Plaintiff Johnston is and was, at all times material herein, a citizen of the United States and a resident of Ray County, and the State of Missouri. At all times relevant, she is the elected Prosecuting Attorney for Ray County.

3. James E. Murray ("Murray"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Missouri. He holds himself out as a private investigator and is a Missouri licensed private investigator license#2010017202.

4. Star Investigations, LLC, upon information and belief, was, at all times material herein, a Missouri Limited Liability Company registered in the business of private investigations. James Murray was at all times relevant herein, the owner of Star Investigations, LLC and at all times relevant, James Murray was acting within the course and scope of his employment of Defendant Star Investigations.

5. In late 2022, Defendant Murray was retained by an attorney representing the Ray County Sheriff and during that contract work decided to investigate an

alleged sexual assault by David Juan Gutierrez that allegedly occurred in 2019. Defendant Murray was interested in the case because of Mr. Gutierrez's prior relationship with Plaintiff.

6. At the same time, Defendant James Murray volunteered his services to the Ray County Sheriff's Department and accessed documents and files regarding the alleged sexual assault by David Juan Gutierrez.

7. Defendant James Murray decided on his own, to utilize this confidential information and investigate Mr. Gutierrez and his prior relationship with Plaintiff.

8. Defendant James Murray was aware the case was initially reported to the Richmond Police Department and immediately referred to the Missouri Highway Patrol and the Attorney General to avoid any conflict of interest.

9. Defendant James Murray was aware the Attorney General had investigated the case and declined prosecution.

10. In his pursuit of his "private investigation" Defendant James Murray contacted the Missouri Highway Patrol and represented he was with the Ray County Sheriff's Department and wanted a copy of the investigative file.

11. In June 2022, Defendant James Murray represented to Plaintiff he was seeking background information on David Gutierrez. At the time, Plaintiff believed she had a friendly relationship with Defendant because of their discussions of Defendant's daughter's volatile relationship and history of domestic violence. Plaintiff disclosed that she had been involved in a relationship with Mr.

Gutierrez and she terminated the relationship due to his violence. Plaintiff told Defendant James Murray she was a private person and was not the kind of person who wanted to discuss her personal relationships publicly.

12. In that conversation Plaintiff disclosed she was unaware of the allegations of sexual assault until after her relationship ended. She told Defendant Murray that Detective Bagley from the Richmond Police department informed her of the allegations and told her the case was being referred to the Missouri Highway Patrol. Plaintiff told Defendant Murray she was contacted by investigators regarding Mr. Gutierrez's contact information, but was unaware if there was a continuing investigation, and she knew Mr. Gutierrez had moved from the area in 2020.

13. Defendant Murray continued to investigate and determined Plaintiff had sold a vehicle to David Gutierrez.

14. It is Defendant Murray's assertion that Ms. Johnston obstructed the arrest of Mr. Gutierrez by selling him a vehicle that he used to move from the area to escape prosecution.

15. Defendant Murray knew Mr. Gutierrez left Missouri in 2020 and did not return to Ray County. On April 2, 2024, a complaint was filed in Case# 24RY-CR00150 for Mr. Gutierrez's arrest and the warrant was served on April 3, 2024.

16. On April 14, 2024, Mr. Murray posted on the support sheriff Childers Facebook Group:

> **"How I got involved, I apologize in advance from r typos, After Scott Childers took office I went there to help with cold case, free work to keep me busy since I am losing my sight Gence the Typos, While I was working cold cases two civil lawsuits were filed against the Sheriff's Office and the Attorney representing the Sheriff's Office hired me as a PI to help on these cases, During this investigation I learned Camille was meeting with one of the Plaintiffs against the Sheriff at her office and feeding him information so I decided to speak to some of her employees and food fates opened when a former employee said to me that Camille's Boyd raped a woman and nothing was done. She went in to say this boyfriend threatened to kill Judge Walden, Judge Baskins and Camille's moms boyfriend. Biy did she have my attention, If I have yours wait til next time, that is if y'all will tolerate my typos."**

17. On April 14, 2024, Mr. Murray posted **"I even called Camille and recorded her on June 9th, 2023."** Based on that interview, Defendant Murray was aware that Plaintiff did not have any involvement in the investigation and took no action to aide Mr. Gutierrez.

18. On May 9, 2024, Defendant Murray posted on support Sheriff Childers Facebook Group an August 3, 2023, email from the Attorney General indicating that office had declined prosecution of the case in 2022. Based upon this email Mr. Murray had actual notice that Ms. Johnston was not involved in this prosecution and the attorney general had closed the case prior to his

5

Case 4:24-cv-00403-BP   Document 1   Filed 06/14/24   Page 5 of 12

"private investigation." Defendant Murray knew Mr. Gutierrez was not a fugitive at any point prior to the issuance of a warrant.

19. On June 3, 2024, the Kansas City Star reported "Murray is a contractor hired by Steven Coronado, an attorney representing Ray County in two separate and unrelated workplace lawsuits against the Ray County Sheriff.

    While doing that, Murray was made aware of rape allegations made against Johnston's former boyfriend, Juan-David Gutierrez. He worked the Gutierrez case for free, Murray told me."

    In that same article, Mr. Murray was quoted **"Miss Johnston willfully and intentionally obstructed justice by aiding a Paramour who is accused of committing rape and attempted forcible sodomy while living under the roof and sharing a residence with Miss Johnston."**

## COUNT I

## VIOLATION OF THE DPPA 18 U.S.C. §2721, 2722

### Against all Defendants.

20. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 19 and incorporates it as paragraph 20.

21. Ms. Johnston provided her personal information to the Missouri Department of Revenue (DOR) including her age, date of birth, weight, height, and eye color for the purpose of acquiring and utilizing a drivers license.

22. At no time did Johnston provide her consent for any of the Defendants to obtain, disclose, or use her private information for anything but official law-enforcement business.

23. Defendant James Murray was not retained as a private investigator to investigate the Gutierrez case or Plaintiff. In his own interest, Defendant James Murray accessed Ms. Johnston's driver's license record and vehicle title registrations information to further his personal and malicious goals.

24. Intentionally obtaining, disclosing or using driver's license information without an authorized purpose is a violation of the DPPA. The statute provides for criminal fines and civil penalties. 18 U.S.C.§§ 2723, 2724.

25. On information and belief, all Defendants have received training on the proper use of records protected by the DPPA.

26. The DPPA provides redress for violations of a person's protected interest in the privacy of her motor vehicle records and the identifying information therein.

27. The Defendants have each invaded Plaintiff's legally protected interest under the DPPA.

28. None of the Defendant's activities fell within the DPPA's permitted exceptions for procurement of Plaintiff's private information.

29. Mr. Murray's activities did not fall within the DPPA's permitted exceptions for procurement of Plaintiff's private information.

30. Defendants Murray and Star Investigations knew their actions related to Plaintiff's personal information were in violation of the DPAA.

31. Plaintiff has suffered harm because her private information has been obtained unlawfully. Plaintiff suffered and continues to suffer harm by virtue of the increased risk that her protected information is in the possession of Murray who obtained it without a legitimate purpose. Defendant James Murray continues to use this information to pursue his political and personal goals. This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

32. Murray and Star Investigations each willfully and recklessly disregarded the law, entitling Plaintiff to punitive damages under the DPAA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Missouri Law. Plaintiff is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation incurred, and such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C. § 2724(b).

WHEREFORE Plaintiff prays for judgment in her actual damages in excess of $75,000.00 or for statutory damages and attorneys fees for each violation under the DPPA.

## COUNT II

## DEFAMATION

### against all Defendants

33. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 32 and incorporates it as paragraph 33.

34. At all times relevant, Defendant James Murray represented himself as the owner of Star Investigations LLC and was working in that capacity as a private investigator.

35. On April 4, 2024, Defendant James Murray posted on support sheriff Childers Facebook Group: **"Camille's boyfriend rapes a woman, Camille helps s him escape."** And **"Who thinks Camille will answer for her crime?"**

36. On April 5, 2024, Defendant James Murray posted on support sheriff Childers Facebook Group: **"Over the last two years using my own money and resources I have obtained multiple hours of interviews from credible people alleging that Camille Johnston Fg has been involved in many questionable things ranging from having employees take child porb cases to review on their personal computers to other unethical and or criminal activities."**

37. On April 19, 2024, Defendant wrote on the support sheriff Childers Facebook Group that Plaintiff **"was aiding the Suspect in avoiding Law Enforcement."**

38. Defendant James Murray used this information to publish false and defamatory information on social media to intentionally destroy Plaintiff's personal reputation and intrude on her seclusion. Defendant Murray knew this information was false.

39. On June 12, 2024, Defendant James Murray demonstrated his malice in publishing this information by stating on support sheriff Childers Facebook group:
**"She doesn't need to worry about what I have made public, She needs to worry about what I haven't made public!**
**It's her choice where we go from here.**

> **If she will resign I will close my facebook for six months and never work in Ray County again and will only cooperate with Law Rnforcement in any case against her under Subpoena,**
>
> **That's a great compromise."**

40. Defendant James Murray knew that Plaintiff did not aid a suspect in avoiding law enforcement.

41. Defendant James Murray knew that Plaintiff was unaware of the criminal allegations against David Gutierrez and there were no outstanding charges against Mr. Gutierrez.

42. Defendant James Murray knew the criminal allegations were referred to and investigated by the Missouri Highway Patrol and the Attorney General to avoid any conflict of interest and specifically not involve Plaintiff.

43. Prior to making his social media posts in 2024, Defendant James Murray knew that the attorney general had closed the investigation into David Gutierrez in 2022 and that Plaintiff could not and did not obstruct that investigation.

44. Defendant Murray possessed written documents that illustrated Plaintiff had no role in the investigation and could not make any decisions on prosecuting David Gutierrez.

45. Defendant James Murray interviewed Plaintiff and recorded the interview without Plaintiff's permission. During that interview Defendant James Murray was informed that Plaintiff had no role in the investigation and was not aware of criminal charges against Mr. Gutierrez at the time she sold him the vehicle.

46. Defendant James Murray published statements alleging Plaintiff committed crimes was made with actual notice of its falsity and for the purpose of accusing Plaintiff of committing a crime to damage Plaintiff's reputation in the community.

47. Plaintiff has incurred and will continue to incur irreparable damage to her personal reputation from the publication of false and defamatory statements by Defendants.

WHEREFORE, Plaintiff Prays for judgment under Count II for damages in excess of $75,000.00 and for injunctive relief to remove and retract the defamatory statements from all social media platforms.

## COUNT III

### INTRUSION INTO SECLUSION

### Against all Defendants

48. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 47 and incorporates it as paragraph 48.

49. By improperly obtaining Plaintiff's personal information, Defendants intentionally intruded upon the solitude and seclusion of the Johnston's private affairs. Specifically, Defendant Murray sought out and exposed details of Plaintiff's private relationship with David Gutierrez.

50. Defendants intentionally portrayed those details falsely in a highly public manner.

51. The Defendants' intrusion would be highly offensive to a reasonable person.

52. The Defendants' intrusion caused Plaintiff to suffer severe emotional distress and physical harm.

53. The Defendants' intrusion was intended to cause Plaintiff to suffer severe emotional distress and physical harm, and was made with either actual or legal malice, or with reckless disregard of her rights and her privacy.

54. Plaintiff is entitled to damages for Defendant's invasion of privacy in an amount that is fair and reasonable in excess of $75,000.00.

**WHEREFORE**, Plaintiff prays for a judgment in an amount that is fair and reasonable to adequately compensate her for her injuries for this intrusion upon her seclusion.

**JURY DEMAND**   Plaintiff demands a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

Respectfully Submitted,

The Law Office of Chad G. Gardner, PC

By:*/s/ Chad G. Gardner*
Chad G. Gardner. Mo # 63824
11514 Hickman Mills Drive
Kansas City, MO 64134
816-795-6197/ fax 816-471-6129
chadgardnerlaw@gmail.com
**ATTORNEY FOR PLAINTIFF**