# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| CAMILLE A. JOHNSTON, | ) | |
| | ) | |
| Plaintiff and Counter Defendant, | ) | |
| | ) | |
| v. | ) | No. 24-00403-CV-W-BP |
| | ) | |
| JAMES E. MURRAY, *et al.*, | ) | |
| | ) | |
| Defendants and Counter Claimants. | ) | |

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants James Murray and Star Investigations, LLC seek summary judgment on the three claims asserted by Plaintiff. The Court concludes there are disputed issues of material fact, so the Motion, (Doc. 53), is **DENIED**.

## I. BACKGROUND

This section of the Order should not be regarded as findings of fact. The Court is required to construe the Record, and resolve all factual disputes, in the light most favorable to the nonmoving party—here, Plaintiff. This includes disputes regarding the timing of events; the parties do not always cite evidence clearly establishing when certain events occurred. The parties agree on some facts, so the Court will provide citations to the Record only as necessary.

At all relevant times, Plaintiff was (and still is) the elected prosecutor for Ray County, Missouri. Murray is a licensed private investigator in Missouri; he owns Star Investigations, which is a licensed private investigation agency in Missouri. Scott Childers became the Sheriff for Ray County in 2020, and he was the Sheriff for all times relevant to this suit. At times Defendants provided investigation services to Ray County for free. Providing further context for the issues are facts (which need not be detailed here) demonstrating (1) Childers and Plaintiff had several

disputes related to the management and conduct of their respective offices and (2) Murray was an active supporter of Childers's.

Beginning in approximately March 2018, Plaintiff had a romantic relationship with David Gutierrez, and he lived in her house from Spring 2019 to June 2020. Gutierrez was abusive toward Plaintiff, and in late June 2020 Plaintiff's mother and her boyfriend helped Plaintiff remove Gutierrez from her house, at which point he moved out of state. (Doc. 54-1, pp. 11-12 (Plaintiff's Dep., pp. 44-46).)[1]

Meanwhile, at some point Gutierrez had become a suspect in a sexual assault that was committed in 2019. The investigation was initially conducted by the Richmond Police Department (the "Richmond PD"). Plaintiff did not know anything about the crime, the accusation against Gutierrez, or the investigation until July 2020—approximately a month after Gutierrez moved out of Plaintiff's house. At that time the Chief of Police for the Richmond PD, Scott Bagley, told her about the investigation. (Doc. 54-1, p. 12 (Plaintiff's Dep., pp. 45-47).) But the crime occurred in Ray County, which created a conflict of interest, given Plaintiff's relationship with Gutierrez and the fact that she was the prosecuting attorney for Ray County. Accordingly, sometime between July 2020 and April 2022 the investigation was transferred to the Missouri Highway Patrol, and any potential prosecution was to be handled by the Missouri Attorney General's Office (the "AG's Office"). The investigation stalled because Gutierrez could not be located; the Assistant Attorney General assigned to the matter, Tristin Estep, would later explain she believed he had left the country. (Doc. 55-1, p. 3.)

---

[1] Unless otherwise specified, all page numbers for documents filed with the Court are those generated by the CM/ECF system.

2

As Murray would later explain, in April 2022, while "investigating questionable activities of" Plaintiff, he "became aware of" the Richmond PD's investigation into Gutierrez.  (Doc. 55-1, p. 2; Doc. 55-3, p. 2.)[2]  He spoke with Bagley, who explained the Richmond PD was no longer investigating the matter because it had been referred to the Highway Patrol and the AG's Office. He also explained why the Highway Patrol and the AG's Office were handling the matter.  Murray reported this information—including the fact that the matter had been referred to the Highway Patrol and the AG's Office before Childers took office in 2020 because of the conflict of interest— to Childers, who, according to Murray, "authorized" Murray to act "as a Cold Case Investigator." (Doc. 55-1, p. 2.)

In May 2022, Murray obtained reports suggesting Gutierrez was living in Mississippi. Those same reports did not suggest Gutierrez was in California, and at the time Murray had no other reason to believe he was in California.  (Doc. 54-2, p. 19 (Murray Dep., p. 73-74).)

In October 2022, Murray spoke with Mike Fennewald from the Highway Patrol, identified himself as a "volunteer . . . unpaid Cold Case Investigator," observed that "it appeared that [the Gutierrez matter] was no longer being actively investigated and [he] was willing to look into it." (Doc. 55-1, pp. 2-3.)  He further explained that he was "not a Deputy but a [private investigator] helping out."  (Doc. 55-16.)  Fennewald advised that "he was fine with" Murray looking into the matter.  (Doc. 55-1, p. 3.)

In early November 2022, Murray wrote a letter to Estep, explaining that he learned about the Gutierrez matter while investigating Plaintiff for "questionable activities" and he believed Plaintiff was helping Gutierrez avoid prosecution.  (Doc. 55-3, p. 2.)  Soon thereafter, Murray spoke

---

[2] These documents, and some others, have been provided to the Court in redacted form.  From context, the parties' discussions, and other evidence in the case, much (but not all) of the redacted information can be ascertained.

with Estep, who told him she believed Gutierrez had left the country. Murray represents that he told Estep that he believed Plaintiff helped Gutierrez flee and evade law enforcement, and that Estep told him that if he found any such evidence to bring it to her. (Doc. 55-1, p. 3.)

At some point, Murray sought a CLEAR Report (and other investigative reports) to obtain, among other things, Plaintiff's driver's license information. (Doc. 54-2, pp. 19-20 (Murray Dep., pp. 74-79).) The CLEAR Report also indicated that someone in California ran a credit report on Plaintiff, and Murray—believing a credit report request is "typically done on rental property background checks"—concluded she may have rented an apartment or house for Gutierrez in California. (Doc. 54-2, p. 22 (Murray Dep., pp. 85-86).) In November 2022 he sent a letter or email containing information about Gutierrez and Plaintiff to a Sergeant ("Sergeant Lee") with the Los Angeles Sheriff's Department. (Doc. 55-4; *see also* Doc. 54-2, p. 21 (Murray Dep., p. 81).) The letter advised that Gutierrez was a suspect in a crime in Missouri and was believed to be living in the Los Angeles area and, while there was no warrant for his arrest, charges would be filed if he could be located. Murray also advised that Plaintiff "visits periodically and it would be helpful if" Lee "could verify her association with Gutierrez through utility records or any other means you may have available." (Doc. 55-4, p. 4.) Murray also sent Sergeant Lee copies of, and information obtained from, Plaintiff's driver's license record (including, at a minimum, her driver's license photo).

In August 2023, Childers, in Murray's presence, "called the Attorney General's Office and spoke with Tristin Estep, who advised him that the case regarding [Gutierrez] had been closed . . . due to [the] statute of limitations." (Doc. 55-1, p. 4; *see also* Doc. 54-2, p. 24 (Murray Dep., p. 95).) Estep also sent Childers an email stating that the AG's Office "declined prosecution on this

4

case last year [because] it is now outside of the statute of limitations." (Doc. 55-19.)[3] Despite this, Murray did not believe the statute of limitations had expired and continued investigating.

On March 6, 2024, the AG's Office filed a *quo warranto* action, seeking to have Childers removed from office.[4] On that same day, the judge assigned to the case issued an Order "enjoining Childers from engaging in any activity, or exercising any authority, as the Sheriff of Ray County[.]" Thereafter, Murray made numerous posts on Facebook related to Childers, Gutierrez, and Plaintiff. One, in which he related that he was "not a Deputy but a [private investigator] helping out," (Doc. 55-16), was cited earlier. Another post suggests Murray knew all along that the Highway Patrol, and not the Ray County Sheriff's office, was the investigating agency on the Gutierrez matter. (Doc. 55-15.) In another post, dated April 4, 2024, Murray accused Plaintiff of helping Gutierrez "escape" then "mak[ing] a stink" resulting in the AG's Office filing the *quo warranto* action against Childers, (Doc. 55-18), even though the *quo warranto* action had nothing to do with the investigation into Gutierrez. That post further suggests Plaintiff would have a role in Gutierrez's future prosecution and concludes by asking if Plaintiff "will answer for her crime?" (Doc. 55-18.)

In April or May of 2024 (likely mid-April), Murray learned that Plaintiff had transferred ownership of a truck to Gutierrez. That same information led Murray to believe Gutierrez was in Mississippi. (Doc. 54-2, p. 17 (Murray Dep., pp. 65-66).) Gutierrez was arrested in Ohio a few days later. It is not clear why he was arrested; the Record does not reflect any charges had been filed or warrants issued in connection with the 2019 sexual assault case. However, in June 2024, Estep filed an Information in the Circuit Court of Ray County charging Gutierrez with one count of

---

[3] Murray's written statement places this conversation in August 2022, but his deposition and Estep's email place it in August 2023. Moreover, Plaintiff does not suggest this is a factual dispute that should be construed in a particular manner in her favor. Therefore, for purposes of this Order, the Court regards the reference to August 2022 as a typographical error.

[4] The Court takes judicial notice of the *quo warranto* action in Ray County and the documents filed in it; the case number is 24RY-CV00208.

5

attempted first degree sodomy and one count of second-degree sodomy, based on the events from August 2019. Those charges remain pending.[5]

Plaintiff filed this suit in June 2024, asserting three claims: (1) violation of the Driver's Privacy Protection Act (the "DPPA"), 18 U.S.C. §§ 2721-25, (2) defamation, and (3) intrusion into seclusion. Murray filed a counterclaim for abuse of process. Only Defendants seek summary judgment, and they seek summary judgment only on Plaintiff's claims. The Court resolves the parties' arguments below, discussing additional facts as necessary.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing "that there is no genuine issue of material fact and [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).

In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence, *e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (quotation omitted). A party opposing a motion for summary judgment may

---

[5] The Court takes judicial notice of the criminal case in Ray County (including the documents filed in it); the case number is 24RY-CR00150-01.

not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

### A. Count I – Violation of the DPPA

The DPPA prohibits any person from knowingly obtaining or disclosing "personal information, from a motor vehicle record, for any use not permitted" by the DPPA. 18 U.S.C. § 2722(a). Any person who violates this provision "shall be liable to the individual to whom the information pertains[.]" *Id*. § 2724(a). Defendants argue they are entitled to summary judgment because (1) the Record establishes they accessed Plaintiff's driver's license information for a permitted purpose and (2) the Record does not establish that they accessed "personal information" from Plaintiff's motor vehicle record. The Court disagrees with both points.

First, the DPPA permits personal information to be accessed, *inter alia*, (1) by government agencies (including law enforcement agencies) when carrying out their functions and by "any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions" and (2) as part of "any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency[.]" 18 U.S.C. § 2721(b)(1), (4). It also provides such information may be accessed "by any licensed private investigative agency or licensed security service for any purpose" specified in the DPPA. *Id*. § 2721(b)(8). Defendants rely on these provisions and argue they were licensed private investigators, and they were directed by Childers to locate Gutierrez as part of a criminal investigation.[6] This is certainly a possible interpretation of the evidence in the Record, but viewing the evidence in the light most favorable to Plaintiff

---

[6] Defendants also cite the exception for "any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety," 18 U.S.C. § 2721(b)(14), but they do not explain how this exception applies here. (Doc. 54, p. 7.)

demonstrates a factfinder could interpret the evidence differently. A factfinder could conclude that (1) Childers and Defendants knew the Gutierrez investigation was being handled by the Highway Patrol because of a conflict of interest by law enforcement in Ray County, (2) they pursued the matter to further Childers' ongoing professional/personal conflict with Plaintiff, and (3) Defendants were acting in their capacities as private investigations and not acting as part of an official investigation. Thus, a jury could find that Defendants did not access Plaintiff's information for a purpose permitted by the DPPA.

A jury could also find that Defendants accessed "personal information" from Plaintiff's driving record. The DPPA defines the phrase to include "an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . ." 18 U.S.C. § 2725(3). Evidence in the Record would permit a jury to find, at a minimum, that Defendants accessed Plaintiff's driver record, obtained her photograph, and sent it to Sergeant Lee.

For these reasons, after construing the Record in the light most favorable to Plaintiff, the Court concludes Defendants are not entitled to summary judgment on Count I.

## B. Count II – Defamation

"To prevail on a defamation claim, both public-figure and private-figure plaintiffs must prove 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 798 (Mo. 2017) (en banc) (cleaned up; quotations omitted).[7] Defendants argue they are entitled to summary judgment because the Record contains no evidence of damage to Plaintiff's reputation; the Court disagrees.

---

[7] Defendants have not raised any arguments that require the Court to determine whether Plaintiff is a public figure or a private figure for purposes of a defamation claim.

Case 4:24-cv-00403-BP    Document 60    Filed 03/27/26    Page 8 of 11

As stated above, damage to reputation is an independent element of the tort. Damage to reputation can be established "if the plaintiff offers evidence (or a basis for a reasonable inference) of actual injury to his or her reputation, regardless of whether that evidence comes from the plaintiff's testimony, the testimony of others, admissions, documentary evidence, or any other source." *Apperson v. Kaminsky*, 727 S.W.3d 422, 429-30 (Mo. 2026) (en banc).

Plaintiff does not dispute that she must present evidence that Defendants' allegedly defamatory statements damaged her reputation and argues she has done so. (Doc. 55, pp. 16-17.) Some of the evidence she points to may not qualify; for instance, she discusses testimony from friends regarding the effect Murray's Facebook posts had on her and the fact that she felt compelled to move in with one of them. (Doc. 55, p. 17.) This probably does not qualify as evidence about damage to her reputation. However, she also testified that after Murray publicly accused her of committing crimes, "[l]aw enforcement treated [her] differently." (Doc. 54-1, p. 35 (Plaintiff's Dep., p. 137).) She then provided examples. (Doc. 54-1, p. 35 (Plaintiff's Dep., pp. 137-41); *see also* Doc 54-1, p. 34 (Plaintiff's Dep., p. 133).)

Defendants may be able to persuade a jury that the difficulties Plaintiff described were not caused by Murray's statements. But, as with all other factual disputes, the Court must construe this one in Plaintiff's favor and deny Defendants' request for summary judgment.

### C. Count III – Intrusion Into Seclusion

The tort of invasion of privacy has several variations, *see Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. 1983) (en banc); Plaintiff asserts the one referred to as "intrusion into seclusion." This variation has three elements: "(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *Crow v. Crawford & Co.*,

259 S.W.3d 104, 120 (Mo. Ct. App. 2008) (quotation omitted). The plaintiff need not prove that the private matter was published after it was acquired, *Sofka*, 662 S.W.2d at 510; this differentiates intrusion into seclusion from a different privacy-related tort (public disclosure of private facts) which does require publication. *See Balke v. Ream*, 33 S.W.3d 589, 594 (Mo. Ct. App. 2000). "To meet the third element, the claimant must show that the other party unreasonably *obtained* information about the claimant's private subject matter." *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 610 (Mo. Ct. App. 1998) (emphasis in original). The Court doubts the Record supports this claim: Plaintiff focuses on the fact that Murray publicized the fact that she was a victim of domestic violence, (Doc. 55, pp. 18-19), which improperly "confuses 'publishing' with 'obtaining.'" *St. Anthony's Med. Ctr.*, 974 S.W.2d at 610. Here, the Record suggests either (1) Plaintiff simply told Murray that Gutierrez abused her during a phone call, (Doc. 54-1, pp. 11, 43 (Plaintiff's Dep., pp. 42, 170)), or (2) Bagley told Murray that Plaintiff was a victim of abuse, and Plaintiff confirmed that fact in a subsequent phone conversation with Murray. (Doc. 54-2, pp. 5-6, 15-16 (Murray Dep., pp. 19-23, 60-61).) Either way, there is no evidence Murray obtained the information through unreasonable means, and Plaintiff does not address this element.

That said, the Court denies Defendants' request for summary judgment because they did not raise this issue with respect to the fact that Plaintiff was a victim of domestic abuse.[8]

---

[8] In seeking summary judgment, Defendants focus on their acquisition of facts from Plaintiff's driving record and argue that if those facts are not protected by the DPPA they cannot be deemed "secret and private" for purposes of the tort. (Doc. 54, p. 12.) However, as explained above, Count III is not based on facts Defendants obtained from Plaintiff's driving record. Defendants also argue that Plaintiff's relationship with Gutierrez was known to many others and thus was not private information, but Count III is not based on theory that Plaintiff's relationship with Gutierrez was a private matter; it is based on theory that the abuse Plaintiff suffered was a private matter.

### III.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment, (Doc. 53), is

**DENIED**.[9]

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: March 27, 2026             UNITED STATES DISTRICT COURT

---

[9] While Plaintiff did not seek summary judgment on Murray's counterclaim for abuse of process, the Court doubts the Record contains evidence to support it.  The elements for an abuse of process claim are: "(1) the present defendant [on the claim for abuse of process] made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990) (en banc) (quotation omitted).  The first element requires evidence "that the process was used to accomplish an unlawful end or that it compelled the defendants to do something they could not be legally compelled to do." *Teefey v. Cleaves*, 73 S.W.3d 813, 818 (Mo. Ct. App. 2002).  Evil motive alone is insufficient; "[n]o liability attaches where a party has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time." *Pipefitters Health & Welfare Tr. v. Waldo R., Inc.*, 760 S.W.2d 196, 198-99 (Mo. Ct. App. 1988); *see also Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 320 (Mo. Ct. App. 2010).  Moreover, the merits of the original claim are irrelevant to a subsequent abuse of process claim.  "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse even if the plaintiff . . . knowingly brought suit upon an unfounded claim." *Jenkins v. Revolution Helicopter Corp.*, 925 S.W.2d 939, 945 (Mo. Ct. App. 1996); *see also Dillard Dep't Stores, Inc. v. Muegler*, 775 S.W.2d 179, 183 (Mo. Ct. App. 1989).  This is the key distinction between a claim for abuse of process and a claim for malicious prosecution.  "The difference between a claim for malicious prosecution and abuse of process is not the commencement of an action without justification but *the misuse of process for an end other than that which it was designed to accomplish*." *Diehl*, 309 S.W.3d at 320 (emphasis added); *see also Impey v. Clithero*, 553 S.W.3d 344, 352 (Mo. Ct. App. 2018).  Here, Murray alleges Plaintiff filed this suit (1) as retaliation for him asking the Attorney General to file a *quo warranto* action against her and (2) to keep him from revealing her relationship with Gutierrez and the extent to which she allegedly helped him.  (Doc. 27, p. 11, ¶ 8.)  However, as explained, Plaintiff's allegedly retaliatory motive is irrelevant, and there is no evidence Plaintiff filed this suit to silence Murray.  In fact, the Record reflects Murray announced his beliefs regarding Plaintiff's involvement with and assistance to Gutierrez—both privately and on social media—before Plaintiff filed her suit, making it unlikely the suit was intended for that purpose.

11